2022 PA Super 91

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHAWN C. CONKLIN | : | |
| | : | |
| Appellant | : | No. 1141 MDA 2021 |

Appeal from the Judgment of Sentence Entered July 13, 2021
In the Court of Common Pleas of Wyoming County Criminal Division at
No(s): CP-66-CR-0000472-2015

BEFORE: STABILE, J., KING, J., and STEVENS, P.J.E.*

OPINION BY STEVENS, P.J.E.: **FILED MAY 18, 2022**

Appellant, Shawn C. Conklin, appeals from the judgment of sentence entered in the Court of Common Pleas of Wyoming County after he pled guilty to three counts of Aggravated Assault committed during his unprovoked knife attack on family and friends in his residence. After careful review, we affirm.

The trial court opinion sets forth the relevant facts and procedural history, as follows:

> On April 19, 2015, an Affidavit of Probable Cause was filed setting forth that on April 18, 2015, at 10:38 pm, a 911 call was received at the Wyoming County 911 Center from a man named Matt Christofferson, stating his uncle was running around the residence stabbing people.
>
> Police and EMS arrived on scene at 10:48 p.m. and were met by multiple people yelling for help. The police were informed that the suspect was inside and may still be stabbing people. Officers entered the residence and announced their presence.

---

* Former Justice specially assigned to the Superior Court.

The suspect, later identified as Shawn Conklin (hereafter ["Appellant"]), came out from a hallway and surrendered to police and was taken into custody. The police observed blood stains on the clothing of the Appellant as well as blood stains on multiple locations throughout the inside and outside of the residence. The police observed a victim lying in the hallway behind the Appellant along with a knife by the victim's head. The knife was a folding hunting knife and was also covered in blood.

On April 19, 2015, at 1:40 a.m., the homeowner Selee Conklin, sister of the Appellant, was interviewed by the Police. She advised there were eleven people in the residence at the time of the incident. Selee was sleeping in the basement at the time the stabbing started and was awoken by people screaming for help and yelling to call 911.

A seventeen-year-old female, hereinafter referred to as L.C., was interviewed by the police and stated she was in the basement of the residence, and when she went upstairs she observed the Appellant stabbing his wife Karen Conklin. Karen was on the couch at the time and Appellant was behind Karen stabbing her. L.C. then ran outside. When she went back into the residence another seventeen-year-old female, hereinafter referred to as S.S., was with her. Once in the hallway, L.C. attempted to call 911 but was unsuccessful. When she looked up from her phone she observed Appellant stab S.S. in the face, shoulders, and stomach.

Then L.C.'s father attempted to stop Appellant from stabbing S.S. As a result of this, S.S. was able to escape and jump out of a bedroom window. L.C. then observed Appellant stab her father. At this time, L.C. was on the phone with 911 and yelling at Appellant to stop stabbing her father. L.C. then ran outside and did not go back into the residence.

At approximately 1:30 a.m., the police conducted a cursory check of the exterior of the residence and observed blood droplets around a vehicle and a large amount of blood on the inside of the passenger side of the vehicle. Matt Christofferson's injuries observed by the EMS at the scene included multiple stab wounds from his neck to his torso. Injuries were determined to be life threatening.

Appellant was interviewed by the police, wherein his **Miranda** rights were read to him and Appellant signed a waiver form and consented to be interviewed. Appellant admitted to the police that he repeatedly stabbed his wife, Karen Conklin, as she sat on the couch. Appellant further admitted to stabbing his brother-in-law Harold Chistofferson.[1] Additionally, Appellant admitted that he stabbed [S.S.] because she jumped on Appellant's back which prevented him from continuing to stab Harold. Appellant further stated that "if I had a gun I would have sprayed them all."

On April 22, 2015, the police spoke with Appellant's wife, Karen Conklin at the Geisinger Wyoming Valley Medical Center regarding the investigation. Karen advised she and the Defendant had an argument early Sunday. She spent the day away from Appellant shopping and upon returning to the residence that evening she sat on the couch and Appellant sat next to her, so she got up to move. She then sat between her son and her nephew, both minors, so Appellant could not be near her. Appellant then went to the back of the couch behind her and proceeded to stab her. Karen advised she did not know she was being stabbed at the time she thought Appellant was punching her in the face. Karen stated Appellant was angry and quiet prior to the attack and the attack came out of nowhere.

Appellant then stopped stabbing her for unknown reasons and Karen felt blood rushing down her face. She then went out the backdoor of the residence to get away from Appellant and sat in a van located in the driveway. While leaving the residence, Karen observed Appellant holding someone in the hallway by the bathroom. She related that the person was pretty bloody. While in the van, Karen told her niece and nephew, both minors, to call 911.

While at the hospital, the police observed Karen to have a cut on her right cheek and chin, along with lacerations on both triceps, left elbow, and her left hand. Karen's right wrist was also bandaged. She related that she was stabbed on both breasts and had a total of ten to eleven stab wounds. She was unable to provide a written statement at that time due to her arms being injured, but related when she was released from the hospital that

---

[1] The trial court record makes varying references to this single victim as either "Matt Christofferson" or "Harold Kristofferson."

she would provide the police with a written statement and follow up interview.

. . .

Thereafter, on January 7, 2016, a Criminal Information was filed in the Court of Common Pleas of Wyoming County docket number 472-2015, charging Appellant with [three counts of Criminal Attempt/Murder Third Degree,[fn 1] three counts of Criminal Attempt/Criminal Homicide,[fn 2] three counts of Criminal Attempt/Voluntary Manslaughter,[fn 3] six counts of Aggravated Assault,[fn 4] and three counts of Simple Assault. [fn 5]]

---

Fn 1    18 Pa.C.S. § 901(a), 18 Pa.C.S. §2502(c).

Fn 2    18 Pa.C.S. § 901(a), 18 Pa.C.S. 2501(a).

Fn 3    18 Pa.C.S. § 901(a), 18 Pa.C.S. 2503(a)(1).

Fn 4    18 Pa.C.S. § 2702(a)(1) and (a)(4).

Fn 5    18 Pa.C.S. § 2701(a)(1).

---

Defense Counsel and the Commonwealth each motioned the trial court to have a mental evaluation completed on Appellant to determine if Appellant was competent to stand trial. Said motions were granted and by Order dated August 17, 2015, upon receipt and review of said evaluations performed by Dr. Richard Fischbein and Dr. Brett DiGiovanna for the Pennsylvania Department of Human Services, it was determined Appellant was competent to stand trial.

Appellant pled guilty but mentally ill on January 8, 2016, to count one Criminal Attempt/Murder of the Third Degree, a felony in the first degree, and count ten and count eleven Aggravated Assault, felonies in the first degree.

After review of an extensive Pre-Sentence Investigation Report, which included the mental health evaluation, Appellant was sentenced on February 10, 2016, [to an aggregate sentence of 360 to 720 months' imprisonment, which comprised consecutively

run, standard range sentences of 240 to 480 months for attempted murder of the third degree, and 60 to 120 months for each of two counts of aggravated assault.] The consecutive sentences were imposed due to three separate victims.

On or about February 16, 2016, Defense Counsel filed a Post-Sentence Motion for Reconsideration of Sentence & Motion for mental Health Determination and to Vacate Sentence. Said motion was denied due to the reports of Richard E. Fischbein, M.D. and the Pennsylvania Department of Human Services reports finding that Appellant was not severely mentally disabled at the time of sentence. [No direct appeal was filed].

Trial Court Opinion, 10/7/21, at 1-6.

Appellant filed a [timely] *pro se* PCRA [petition] on June 28, 2016, alleging, *inter alia*, that counsel never filed a requested direct appeal and that the trial court failed to consider his guilty, but mentally ill, plea at sentencing. After the appointment of counsel, but before an amended counseled petition was filed, the PCRA court held a hearing during which the parties stipulated that Appellant was entitled to a new sentencing hearing because the trial court did not hear testimony and make a finding on the issue of whether Appellant at the time of sentencing was severely mentally disabled and in need of treatment pursuant to the Mental Health Procedures Act. *See* 42 Pa.C.S. § 9727(a), P.S. §§ 7101-7503. The PCRA court, therefore, entered an order remanding for completion of a supplemental Mental Health Evaluation of Appellant, to be followed by a resentencing hearing.

On remand, the trial court conducted a resentencing hearing on November 16, 2017. Based on both the testimony of a forensic psychologist and the agreement of counsel, the trial court determined Appellant was

- 5 -

"severely mentally disabled [] and in need of treatment pursuant to the Mental Health Procedures Act." N.T., 11/16/17, at 39. In receipt of an updated PSI report, the trial court resentenced Appellant to the same sentence as it had in 2016. Appellant filed a direct appeal, and this Court affirmed. **See Commonwealth v. Conklin**, 1979 MDA 2017 (unpub. memo.) (Pa. Super. filed October 10, 2018).

On January 17, 2019, Appellant filed *pro se* a PCRA petition, and counsel was appointed. Counsel filed a petition to withdraw pursuant to **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1998) and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*). The PCRA court granted counsel's motion to withdraw and, by order of February 24, 2020, which was clarified by subsequent order of April 20, 2020, the court denied PCRA relief.

Appellant filed a timely *pro se* appeal to the Superior Court. In our memorandum decision vacating Appellant's entire guilty plea and judgment of sentence, and remanding for further proceedings, we indicated that our review of the record "revealed a defect in Appellant's guilty plea that has, thus far, been overlooked – his plea to attempted murder in the third degree."

Specifically, we explained that a person cannot commit the crime of attempted second or third degree murder. Instead, "[a]n attempt to commit murder can only constitute an attempt to commit murder of the first degree, because both second and third degree murder are unintended results of a specific intent to commit a felony or serious bodily harm, not to kill." **Commonwealth v. Conklin**, 562 MDA 2020, at *14 (unpub. memo.) (Pa.

Super. filed October 28, 2020) (quoting **Commonwealth v. Spells**, 612 A.2d 458, 461 n.5 (Pa. Super. 1992)). **See also Commonwealth v. Predmore**, 199 A.3d 925, 929 n.1 (Pa. Super. 2018) (*en banc*) ("Attempted murder is, by definition, attempted first-degree murder").

We continued:

> Because Appellant pled guilty to a crime that is not cognizable, we conclude his sentence for attempted third degree murder is illegal. The fact that Appellant voluntarily entered a guilty plea to the crime is of no moment: '[o]ur cases clearly state that a criminal defendant cannot agree to an illegal sentence, so the fact that the illegality was a term of his plea bargain is of no legal significance.'

**Conklin**, 562 MDA 2020 at *15 (citing **Commonwealth v. Rivera**, 154 A.3d 370, 381 (Pa. Super. 2017) (*en banc*).

On remand, Appellant entered a plea of guilty but mentally ill to three counts of Aggravated Assault. **See** Guilty Plea, 7/9/21. On July 13, 2021, the trial court sentenced Appellant to an aggregate sentence of 228 to 528 months' incarceration, which represented a reduced aggregate sentence from Appellant's previous sentence of 360 to 720 months.

Like the previous sentencing scheme, the new aggregate sentence comprised consecutively run sentences. The individual sentences included an aggravated range sentence of 84 to 120 months on the new Aggravated Assault count based on conduct that had previously been charged as

- 7 -

attempted murder,[2] and a standard range sentence of 72 to 144 months on each of the two remaining counts of Aggravated Assault, Counts (B) and (C), which represented an increase from the previous standard range sentences of 60 to 120 months on the same counts.

Appellant timely filed post-sentence motions which challenged, *inter alia*, that the court increased the sentences on the Aggravated Assault Counts at (B) and (C) without providing adequate explanation or justification for doing so. The trial court denied Appellant's post-sentence motions, and this timely appeal followed. Herein, Appellant raises the following questions for our consideration:

1. Did the trial court violate Appellant's rights under the Double Jeopardy provisions of both the Commonwealth and Federal Constitutions by sentencing Appellant to a term of incarceration of seventy-two months to one hundred forty-four months consecutive in counts (B) and (C) where the court had previously imposed sentences of sixty to one hundred twenty months on each count and where no factors were presented at sentencing hearing justifying such an increase?

2. Was the sentence of seventy-two months to one hundred forty-four months on counts (B) and (C) a product of vindictiveness where the court had previously sentenced Appellant to terms of sixty to one hundred twenty months on each of the said counts and where no additional justification was presented at the time of sentencing to warrant an increase?

---

[2] At the sentencing hearing of July 13, 2021, the Commonwealth sought an aggravated range sentence for the new count of Aggravated Assault, as the victim, Harold Kristofferson, was stabbed about 50 times in his torso causing him to suffer extreme injuries to his abdomen. N.T., 7/13/21, at 10-111.

3. Did the trial court error [sic] in imposing an aggravated range sentence undr [sic] the guidelines as to count (A) where the sentence imposed was eighty-four months to two hundred forty months of incarceration where the court failed to place on the records sufficient reasons justifying an aggravated range sentence?

Brief of Appellant, at 6.

For expediency of review, we first address Appellant's second issue alleging that the increase of his sentences for Aggravated Assault at Counts (B) and (C) was a product of the court's vindictiveness. With this claim, Appellant challenges the discretionary aspects of his sentence.

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.
>
> * * *
>
> When imposing [a] sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant. In considering these factors, the court should refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation.

*Commonwealth v. Antidormi*, 84 A.3d 736, 760-61 (Pa. Super. 2014) (internal citations and quotation marks omitted).

An appellant is not entitled to the review of challenges to the discretionary aspects of a sentence as of right. Rather, an appellant challenging the discretionary aspects of his sentence must invoke this Court's

jurisdiction.  We determine whether the appellant has invoked our jurisdiction by considering the following four factors:

> (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[ ] § 9781(b).

***Commonwealth v. Samuel***, 102 A.3d 1001, 1006-07 (Pa. Super. 2014) (some citations omitted).

In the case *sub judice*, Appellant has satisfied the first three requirements: he timely filed a notice of appeal, sought reconsideration of his sentence in a post-sentence motion, and his brief contains a Pa.R.A.P. 2119(f) statement.

> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. ***Commonwealth v. Paul***, 925 A.2d 825, 828 (Pa. Super. 2007).  We have found that a substantial question exists "when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Commonwealth v. Phillips***, 946 A.2d 103, 112 (Pa. Super. 2008) (citation omitted), ***appeal denied***, 600 Pa. 745, 964 A.2d 895 (2009).  "[W]e cannot look beyond the statement of questions presented and the prefatory [Rule] 2119(f) statement to determine whether a substantial question exists." ***Commonwealth v. Christine***, 78 A.3d 1, 10 (Pa. Super. 2013), ***aff'd***, 633 Pa. 389, 125 A.3d 394 (2015).  Indeed, it is settled that Appellant's claim that his sentence on remand was a product of vindictiveness presents a substantial question for our review. ***See Commonwealth v. Tapp***, 997 A.2d 1201, 1202–03 (Pa. Super. 2010) (noting that "alleging judicial vindictiveness ... constitute[s] a substantial question mandating appellate review"),

*appeal denied*, 608 Pa. 654, 12 A.3d 752 (2010). Accordingly, we address the merits of Appellant's vindictiveness claim.

*Commonwealth v. Barnes*, 167 A.3d 110, 122–23 (Pa. Super. 2017) (*en banc*). Thus, we address the merits of Appellant's vindictiveness claim.

The United States Supreme Court in *Carolina v. Pearce*, 395 U.S. 711 [ ] (1989) stated:

> Due process of law ... requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.
>
> In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal.

*Pearce*, 395 U.S. at 725-26.

This Court has held that "*Pearce*'s rationale for providing reasons on the record applies also when the original sentence is vacated and a second sentence is imposed without an additional trial." *Barnes*, 167 A.3d at 110 (citation omitted). Absent evidence that a sentencing increase is justified, "the presumption of vindictiveness cannot be rebutted." *Commonwealth v. Serrano*, 727 A.2d 1168, 1170 (Pa. Super. 1990).

- 11 -

However, the presumption can be rebutted where a trial court imposes higher sentences on certain counts during re-sentencing to effect the same aggregate sentence as previously imposed and preserve its sentencing scheme. **Barnes**, 167 A.3d at 124 ("[A] judge can duplicate the effect of the original sentencing plan by adjusting the sentences on various counts so that the aggregate punishment remains the same."). This Court in **Barnes** analyzed our decision in **Commonwealth v. McHale**, 924 A.2d 664 (Pa. Super. 2007), *overruled in part on other grounds by* **Commonwealth v. Robinson**, 931 A.2d 15 (Pa. Super. 2007):

> In [**McHale**], we upheld the trial court's resentencing of the defendant when his conviction on the most serious charges, two counts of aggravated assault, previously had been based on insufficient evidence. After remand, to maintain the same total aggregate sentence as originally imposed, the trial court increased the overall sentence on the surviving counts. Noting that the aggregate sentence remained unchanged, we upheld the new sentence. In so doing, we noted:
>
> [O]ur conclusion is not altered by the fact that remand and resentencing were prompted by reversal of two of [the defendant's] convictions.... Whether remand is the result of reversal of one or more convictions or vacation of an illegal sentence, we conclude that the trial court has the same discretion and responsibilities in resentencing.

**Barnes**, 167 A.3d at 124-25 (citations omitted).

Here, we decline to hold the trial court imposed a "vindictive sentence" on Appellant where his aggregate sentence after remand was *decreased*

- 12 -

considerably, a fact which Appellant does not dispute,[3] and where it is apparent that the trial court increased Appellant's sentences for Aggravated Assault at Counts (B) and (C) not out of vindictiveness, but in an attempt to achieve as much as possible the purpose and effect of its original sentencing scheme.

In the trial court's post-remand sentencing order, it noted this Court's opinion that the trial court's and parties' collective misapprehension regarding the count of attempted third-degree murder affected the entire original guilty plea, which necessarily bore upon the corresponding sentence.

The court's acknowledgment in this regard is reflected in the new aggregate sentence it imposed that includes both an aggravated range sentence for the new count of Aggravated Assault replacing the standard range sentence for Attempted Third Degree Murder, and increased standard range sentences for the remaining Aggravated Assault offenses at Counts (B) and (C). The court also imposed the latter sentences consecutively, as it did in the original sentencing scheme.

In increasing Counts (B) and (C) while keeping them within the standard guideline range, it is apparent that the trial court sought to conform the new

_____

[3] Indeed, Appellant's challenge that he improperly received a heightened sentence asks us to look only at one part of his new sentence and compare it to one part of his old sentence without regard for the overall sentencing scheme of both the new and old sentences. We have not done so previously, and we will not do so now.

aggregate sentence as closely as possible to the intent behind the original aggregate sentence. At the sentencing hearing, the court explained that it based all of its sentences upon the extreme nature of Appellant's stabbing attacks against separate, innocent victims—one of whom was a minor—who each sustained serious injuries. These were the same considerations that informed the trial court's original sentencing scheme. *See* N.T., 2/10/16.

Accordingly, because we do not find that Appellant's resentencing was a result of judicial vindictiveness, Appellant is entitled to no relief on this claim.

Essentially the same rationale defeats Appellant's double jeopardy claim, which challenges the legality of his sentence. *See Commonwealth v. Robinson*, 931 A.2d 15, 21 (Pa. Super. 2007) (noting double jeopardy claims challenge the legality of sentence).[4] Specifically, we have recognized that double jeopardy concerns are not implicated when a lower court responds to such a remand order by increasing sentences on the remaining counts in an attempt to give effect to the purpose of the original aggregate sentencing scheme. For example, in *Commonwealth v. Grispino*, 521 A.2d 950 (Pa. Super. 1987), the appellant had been convicted of robbery, burglary,

---

[4] Appellant contends that the new sentencing order violated double jeopardy principles when it increased his sentences for Aggravated Assault at Counts (B) and (C), respectively. In his brief, Appellant acknowledges that no double jeopardy violation occurs with the modification of an original, illegal sentence, but he posits that the original sentences at counts (B) and (C) were legal and not the subject of this Court's memorandum decision granting PCRA relief by vacating Appellant's entire sentence and remanding for resentencing. Brief for Appellant, at 25.

aggravated assault, recklessly endangering another person ("REAP"), and theft. He was sentenced to 48 to 96 months' incarceration for robbery and to lesser terms for each of the other offenses that, in total, formed an aggregate sentence of 94 to 188 months in prison. *Id*. at 951.

Following post-sentence motions, the trial court acknowledged that the offenses of aggravated assault, REAP, and theft merge with robbery for sentencing purposes. Accordingly, it vacated Grispino's original sentence and re-sentenced him on only the robbery and burglary offenses, imposing an increased prison term of 72 to 144 months for robbery and a lesser sentence for burglary, for an aggregate sentence of 84 to 168 months.

Grispino appealed, claiming that the increase in his robbery sentence violated the prohibition against double jeopardy. This Court disagreed, noting the trial court's determination that a lengthy aggregate sentence of incarceration was warranted and recognizing that the increased sentence for robbery was imposed in order to form a new aggregate sentence nearly as long as the original aggregate sentence. *Id*. at 953. We explained:

> [W]hen a defendant appeals a judgment of sentence, he or she accepts the risk that the Commonwealth may seek a remand for resentencing if the decision in the lower court upsets the original sentencing scheme. ***Commonwealth v. Goldhammer***, ***supra*** at 592, 517 A.2d at 1283. In addition, in ***Commonwealth v. Ford***, 315 Pa. Superior Ct. 281, 300-01, 461 A.2d 1281, 1291 (1983), this Court, quoting the United States Court of Appeals for the Third Circuit, stated that:
>
> [W]hen a defendant has been convicted after trial and sentenced under a multicount indictment and on appeal his conviction and sentence as to certain counts is set aside because such counts

- 15 -

enhanced the sentence for the predicate felony which contained its own enhancement provision, the constitutional guarantee against double jeopardy does not preclude vacating the sentence on the predicate felony counts and the imposition of a new sentence by the trial judge on the remaining counts, which may be greater than, less than, or the same as the original sentence. *Id*. (quoting *United States v. Busic*, 639 F.2d 940, 953 (3d Cir.), *cert. denied*, 452 U.S. 918, 101 S.Ct. 3055, 69 L.Ed.2d 422 (1981)).

Here, both appellant and the Commonwealth filed motions to modify the sentence. The court agreed with appellant that three of the charges merged. The court vacated the entire sentence and resentenced on only the burglary and robbery charges. The sentence on the robbery charge was increased from the original sentence on that charge, yet the aggregate sentence after resentencing was lower than the original aggregate sentence. Under the reasoning expressed in *Goldhammer* and *Ford* then, it is not relevant that the lower court's increase in appellant's sentence was not in response to the Commonwealth's petition to sentence him within the aggravated range because the court was not precluded from resentencing him to conform the overall sentence to that originally intended.

Accordingly, we are compelled to conclude that the lower court did not violate double jeopardy principles by increasing appellant's sentence, and we affirm the judgment of sentence.

*Grispino*, 521 A.2d at 953–54.

As discussed in our resolution of Appellant's vindictiveness claim, it is apparent from the record that the trial court imposed a considerably reduced aggregate sentence but with an increase in the standard guideline range sentences at Counts (B) and (C) and the imposition of an aggravated range sentence for the new Aggravated Assault charge to retain, to the degree possible, the intent behind the original aggregate sentence. For the reasons expressed both in *Grispino* and in our discussion denying relief on Appellant's

discretionary aspects claim, we discern no double jeopardy violation with the court's sentence.

In Appellant's final issue, he asserts a second discretionary aspects challenge that the trial court failed to place adequate reasons on the record to support its aggravated range sentence on the new count of Aggravated Assault as it applied to victim Matt Christofferson.  Appellant's Brief at 18, 29.  ***See Commonwealth v. Fullin***, 892 A.2d 843, 849 (Pa. Super. 2006) (concluding that the appellant raised a substantial question by alleging that the trial court failed to place adequate reasons on the record for imposing an aggravated range sentence).

The relevant portion of 42 Pa.C.S.A. § 9721(b) states:

> In selecting from the alternatives set forth in subsection (a), the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant.... In every case in which the court imposes a sentence for a felony or misdemeanor ... the court shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed.

***Id***.

In addition:

> In imposing sentence, the trial court is required to consider the particular circumstances of the offense and the character of the defendant. The trial court should refer to the defendant's prior criminal record, age, personal characteristics, and potential for rehabilitation. However, where the sentencing judge had the benefit of a presentence investigation report, it will be presumed that he or she was aware of the relevant information regarding

> the defendant's character and weighed those considerations along with mitigating statutory factors. Additionally, the sentencing court must state its reasons for the sentence on the record. 42 Pa.C.S.A. § 9721(b). The sentencing judge can satisfy the requirement that reasons for imposing sentence be placed on the record by indicating that he or she has been informed by the pre-sentencing report; thus properly considering and weighing all relevant factors.

*Commonwealth v. Fowler*, 893 A.2d 758, 767-68 (Pa. Super. 2006) (citing

*Commonwealth v. Boyer*, 856 A.2d 149, 154 (Pa. Super. 2004)) (some

citations omitted).

"A sentencing court need not undertake a lengthy discourse for its reasons for imposing a sentence or specifically reference the statute in question[.]" *Commonwealth v. Crump*, 995 A.2d 1280, 1283 (Pa. Super. 2010) (citation omitted). "[W]hen a trial court imposes a sentence that is within the statutory limits, there is no abuse of discretion unless the sentence is manifestly excessive so as to inflict too severe a punishment." *Commonwealth v. Mouzon*, 812 A.2d 617, 625 (Pa. 2002) (original quotation marks omitted).

On the second day of Appellant's sentencing hearing, counsel for the defense informed the trial court that "Mr. Conklin recognizes that—the serious nature of these charges and they are as about as serious as they come." N.T., 7/13/21, at 6. The Commonwealth, in turn, asked for an aggravated range sentence for the first-degree felony Aggravated Assault count in question, where the victim had sustained "horrific injuries to his abdomen", which required extensive hospitalization and surgeries, as part of receiving about 50

stab wounds to his neck and torso at the hands of Appellant. N.T. at 10; N.T., 7/9/21, at 15-16.

Before imposing the aggravated range guideline sentence, the court indicated its receipt of the presentence investigation ("PSI") report and observed that the attack on this victim was severe, such that any lesser of a sentence would depreciate the serious nature of Appellant's actions. N.T. at 13.

The court also acknowledged Appellant's progress with therapy during his incarceration. N.T. at 14. In the trial court's Pa.R.A.P. 1925(a) opinion, it again noted the extensive PSI report which included victim statements and the psychiatric reports, and it reiterated the reasons for an aggravated range sentence were the severe attack on Mr. Christofferson, the serious nature of the offense, and that any lesser sentence would depreciate the serious nature of Appellant's actions. Trial Court Opinion, 10/7/21, at 10.

Appellant argues that the court failed to indicate how the nature of the attack against Mr. Christofferson substantially differed from the nature of the attacks against the other two victims in Counts (B) and (C). We disagree. The record as developed at the sentencing hearing confirmed that while multiple victims sustained serious injuries, Mr. Christofferson's were particularly extreme, life threatening, and required prolonged and extensive medical intervention. The court's stated reasons in support of the aggravated range sentence reflect these distinctions present in both the PSI report and the record at large, such that we find no merit to Appellant's claim otherwise.

For the foregoing reasons, the present appeal affords Appellant no relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/18/2022