J-S12040-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                                             :          PENNSYLVANIA
                                             :
                v.                         :
                                           :
AARON J. SIMS                         :
                                           :
            Appellant           :    No. 1695 EDA 2023

Appeal from the Judgment of Sentence Entered April 28, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0006313-2021

BEFORE: DUBOW, J., SULLIVAN, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:                **FILED JUNE 24, 2024**

Appellant, Aaron J. Sims, appeals from the aggregate judgment of sentence of 7 to 14 years' incarceration, imposed after he entered a non-negotiated guilty plea to homicide by vehicle while driving under the influence (DUI) and related offenses. On appeal, Appellant's counsel, George S. Yacoubian, Esq., states that there are no, non-frivolous issues that Appellant can raise and, thus, counsel seeks to withdraw his representation of Appellant pursuant to ***Anders v. California***, 386 U.S. 738 (1967), and ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009). After careful review, we affirm Appellant's judgment of sentence and grant counsel's petition to withdraw.

On March 3, 2023, Appellant entered an open guilty plea to homicide by vehicle while DUI, 75 Pa.C.S. § 3735(a)(1)(i); homicide by vehicle, 75 Pa.C.S. § 3732(a); involuntary manslaughter, 18 Pa.C.S. § 2504(a); DUI (highest

rate), 75 Pa.C.S. § 3802(c); three counts of recklessly endangering another person, 18 Pa.C.S. § 275; and two counts each of aggravated assault by vehicle while DUI, 75 Pa.C.S. § 3735.1(a); aggravated assault by vehicle, 75 Pa.C.S. § 3732.1(a); and simple assault, 18 Pa.C.S. § 2701(a). At the plea proceeding, the Commonwealth stated the following facts as the basis for Appellant's convictions:

> On January 25, 2020, the decedent, Chloe Robertson, and her friend, Bobbi Ann Gubbei, were drinking at a bar, and at approximately 1 a.m., ordered an Uber ride share to take them home. Daniel Charles, working as an Uber driver, picked them up in a Hyundai Elantra. During the ride, Miss Gubbei complained about being thirsty, so Mr. Charles pulled over on the shoulder of 1-676 eastbound, near mile marker 1.4, in the city and county of Philadelphia. He pulled over to go to his trunk to get a bottle of water. At approximately 1:11 a.m., [Appellant] … was driving on 676 and rear-ended the stopped Uber vehicle.
>
> Responding troopers saw … [Appellant] stumbling around at the crash scene. He told them he was driving in the right lane and hit the Hyundai. [One t]rooper … noticed that … [Appellant's] eyes were watery, bloodshot, and glassy. The trooper also detected a strong odor of an alcoholic beverage and burnt marijuana emanating from … [Appellant's] breath and person. His words were slurred. … [Appellant] had difficulty walking and was observed swaying and stumbling. The troopers arrested him for suspicion of DUI, read him the DL-26 warnings, and … [Appellant] consented to a blood draw.
>
> The blood was drawn at a hospital and submitted to Drug Scan for analysis. The toxicology report showed a blood alcohol concentration of 0.182, 4 nanograms of marijuana constituent, and 40 nanograms of marijuana metabolite.
>
> Dr. Richard Cohen, a forensic toxicologist, concluded that at or around the time the blood was drawn, it was reasonably scientifically certain that this individual … was a recent user of ethyl alcohol and marijuana taken concomitantly, or in close time proximity to one another, and in toxicologically significant dosage amounts; he was under the combined impairing effects of alcohol

and marijuana and was unfit to operate a motor vehicle safely on the highway.

… [Appellant] gave a video-recorded statement, where he told the Pennsylvania troopers that earlier that day he drank Steel Reserve, then he met with a friend and they shared a bottle of premix[ed] Long Island Iced Tea and smoked marijuana. He then went to his cousin's house around 9 or 10 p.m. and took two shots of tequila. Later that evening, he walked to Johnnie Bleu, a bar on Broad Street, and he had about four drinks at the bar, including straight shots of Hennessy. In his statement, he said, "I was drunk as shit going into Johnnie Bleu, stumbling and shit, and I was still getting drinks."

At the bar, he got into a fight with patrons. He left Johnnie Bleu at approximately 1 a.m., walked back to his car, a silver Acura RL, and drove away. That was approximately 15 minutes before the accident.

He got onto the Vine Street Expressway and was heading back to Camden, New Jersey. He did not remember driving on the shoulder or seeing a car with its hazard lights on. During his statement, he blurted out, "I was fucked up, man."

An eyewitness, Wellington Santana, told the troopers that he observed … [Appellant's] car driving at a high rate of speed, approximately 80 mph, recklessly pass other vehicles, then rear-end the Uber car on the shoulder.

Based on the change of velocity of the Uber car, … an expert accident reconstructionist[] calculated that … [Appellant's] vehicle was traveling at least 74 miles per hour at the time of impact.

The victim in this case, Chloe Robertson, was a 21-year-old female. She died of a blunt impact injury while sitting in the back passenger seat, including multiple lacerations of the neck, disarticulation of C1-C2 spine, transection of the spinal cord, subdural and subarachnoid hemorrhages of the brain and a fractured pelvis.

Bobbi Gubbei, who was also a rear-seat passenger, a 21-year-old female, suffered a spinal injury and a fractured femur, fractured ribs, shattered pelvis, and metal implants were placed in her leg.

Daniel Charles, the Uber driver, was 32 years old. He suffered brain injury and bruises to his body.

> After the arrest warrant was approved for … [Appellant], … [he]
> eluded apprehension for a year.  … [E]ventually, the US Marshals
> were able to locate and apprehend him.

Trial Court Opinion (TCO), 8/4/23, at 2-3 (quoting N.T. Plea, 3/3/23, at 19-24; some brackets omitted).

On April 28, 2023, the trial court sentenced Appellant to a mandatory-minimum term of 3 to 6 years' incarceration for his conviction of homicide by vehicle while DUI, and two consecutive terms of 2 to 4 years' incarceration for each of his two convictions of aggravated assault by vehicle while DUI. Appellant's other convictions either merged for sentencing purposes, or the court imposed no further penalty.  Therefore, his aggregate sentence is 7 to 14 years' incarceration.

Appellant, via Attorney Yacoubian, filed a timely motion for modification of his sentence, which the court denied.  Attorney Yacoubian then filed a timely notice of appeal on Appellant's behalf, and counsel also complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.  Therein, Attorney Yacoubian stated three issues that he intended to raise on appeal:

> 1. [Appellant's] aggregate sentence of 7-14 years' incarceration
> was unduly excessive when weighed against the Commonwealth's
> original offer of 6-12 years' incarceration.
>
> 2. [Appellant's] aggregate sentence of 7-14 years' incarceration
> was contrary to the utilitarian goals of punishment: specific and
> general deterrence, incapacitation, and rehabilitation.
>
> 3. [Appellant's] 2-4-year[,] consecutive sentence for aggravated
> assault [for] victim Daniel Charles was unduly excessive, as Mr.
> [Charles] failed to appear for sentencing, declined to submit a

victim impact letter, and is a named [d]efendant in a civil suit for the underlying incident.

Pa.R.A.P. 1925(b) Statement, 7/12/23, at 1 (unnumbered; brackets added by Appellant omitted).

On October 31, 2023, Attorney Yacoubian filed a petition to withdraw and **Anders** brief. However, this Court ultimately found that counsel had failed to satisfy the requirements of **Anders** and its progeny, discussed *infra*. Accordingly, we remanded with directives for Attorney Yacoubian.

On May 14, 2024, Attorney Yacoubian filed a new **Anders** brief and petition to withdraw. Accordingly,

> this Court must first pass upon counsel's petition to withdraw before reviewing the merits of the underlying issues presented by [the appellant]. **Commonwealth v. Goodwin**, 928 A.2d 287, 290 (Pa. Super. 2007) (*en banc*).

> Prior to withdrawing as counsel on a direct appeal under **Anders**, counsel must file a brief that meets the requirements established by our Supreme Court in **Santiago**. The brief must:

>> (1) provide a summary of the procedural history and facts, with citations to the record;

>> (2) refer to anything in the record that counsel believes arguably supports the appeal;

>> (3) set forth counsel's conclusion that the appeal is frivolous; and

>> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

> **Santiago**, 978 A.2d at 361. Counsel also must provide a copy of the **Anders** brief to his client. Attending the brief must be a letter that advises the client of his right to: "(1) retain new counsel to pursue the appeal; (2) proceed pro se on appeal; or (3) raise any points that the appellant deems worthy of the court[']s attention

- 5 -

in addition to the points raised by counsel in the *Anders* brief." *Commonwealth v. Nischan*, 928 A.2d 349, 353 (Pa. Super. 2007), *appeal denied*, … 936 A.2d 40 ([Pa.] 2007).

*Commonwealth v. Orellana*, 86 A.3d 877, 879-80 (Pa. Super. 2014). After determining that counsel has satisfied these technical requirements of *Anders* and *Santiago*, this Court must then "conduct a simple review of the record to ascertain if there appear[s] on its face to be arguably meritorious issues that counsel, intentionally or not, missed or misstated." *Commonwealth v. Dempster*, 187 A.3d 266, 272 (Pa. Super. 2018) (*en banc*).

In this case, Attorney Yacoubian's May 14, 2024 *Anders* brief complies with the above-stated requirements. Namely, he includes a summary of the relevant factual and procedural history, he refers to portions of the record that could arguably support Appellant's claims, and he sets forth his conclusion that Appellant's appeal is frivolous. He also explains his reasons for reaching that determination, and supports his rationale with citations to the record and pertinent legal authority. Attorney Yacoubian attached a letter directed to Appellant to his petition to withdraw, in which he informed Appellant of the rights enumerated in *Nischan*, and stated that a copy of his *Anders* brief was enclosed. Accordingly, counsel has complied with the technical requirements for withdrawal. We will now independently review the record to determine if Appellant's issues are frivolous, and to ascertain if there are any other, non-frivolous issues he could pursue on appeal.

First, Appellant contends that his aggregate sentence of 7 to 14 years' incarceration is "unduly excessive relative to the Commonwealth's original

[plea] offer of 6 [to] 12 years' incarceration...." **Anders** Brief at 7. Second, Appellant complains that his term of incarceration was "contrary to the utilitarian goals of punishment[,]" which are "deterrence, incapacitation, and rehabilitation." **Id.** at 8. Third, Appellant avers that the court abused its discretion by imposing a consecutive sentence for the aggravated assault of Mr. Charles, when Mr. Charles did not appear at sentencing or submit a victim-impact statement, and he is also named as a defendant in a civil lawsuit pertaining to this incident.

Each of these claims challenges the discretionary aspects of Appellant's sentence.

> Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. **Commonwealth v. Sierra**, 752 A.2d 910, 912 (Pa. Super. 2000). An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
>> We conduct a four-part analysis to determine: (1) whether [the] appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. 720; (3) whether [the] appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[] § 9781(b).
>
> **Commonwealth v. Evans**, 901 A.2d 528, 533 (Pa. Super. 2006), *appeal denied*, … 909 A.2d 303 ([Pa.] 2006). Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or in a motion to modify the sentence imposed. **Commonwealth v. Mann**, 820 A.2d 788, 794 (Pa. Super. 2003), *appeal denied*, … 831 A.2d 599 ([Pa.] 2003).

> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. ***Commonwealth v. Paul***, 925 A.2d 825, 828 (Pa. Super. 2007). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Sierra, supra*** at 912–13.

***Commonwealth v. Griffin***, 65 A.3d 932, 935 (Pa. Super. 2013) (quoting

***Commonwealth v. Moury***, 992 A.2d 162, 170 (Pa. Super. 2010)).

Here, Appellant filed a timely notice of appeal. He also filed a timely post-sentence motion, in which he raised his claims that his sentence is excessive relative to the Commonwealth's initial plea offer, and that the court's imposition of a consecutive sentence for the aggravated assault of Mr. Charles was an abuse of discretion. **See** Motion to Modify Sentence, 4/28/23, at 1-2 (unnumbered). However, Appellant did not assert, in his post-sentence motion, that his sentence is contrary to the goals of deterrence, incapacitation, and rehabilitation. Therefore, this claim is waived. **See Griffin**, 65 A.3d at 936 ("[I]ssues challenging the discretionary aspects of a sentence must be raised in a post-sentence motion or by presenting the claim to the trial court during the sentencing proceedings. Absent such efforts, an objection to a discretionary aspect of a sentence is waived.") (citation omitted).

We also note that Attorney Yacoubian has not provided a Rule 2119(f) statement in his **Anders** brief. However, "[w]here counsel files an **Anders** brief, this Court has reviewed the matter even absent a separate Pa.R.A.P. 2119(f) statement." ***Commonwealth v. Zeigler***, 112 A.3d 656, 661 (Pa.

Super. 2015) (citations omitted). Thus, we will evaluate whether the two sentencing challenges preserved in Appellant's post-sentence motion constitute substantial questions for our review.

Regarding Appellant's contention that his sentence of 7 to 14 years is excessive because the Commonwealth originally offered him a plea deal of 6 to 12 years, we conclude that this argument does not amount to a substantial question. No aspect of the Sentencing Code, nor fundamental norm of the sentencing process, requires a court to sentence in accordance with a rejected plea offer. Additionally, Appellant's claim that the court erred by imposing a consecutive term of incarceration for his offense against Mr. Charles, who did not appear for sentencing and is named, alongside Appellant, as a defendant in a civil lawsuit, also fails to constitute a substantial question for our review. *See Commonwealth v. Caldwell*, 117 A.3d 763, 769 (Pa. Super. 2015) ("A court's exercise of discretion in imposing a sentence concurrently or consecutively does not ordinarily raise a substantial question.").

In any event, even if Appellant's arguments did amount to substantial questions, we would conclude that no relief is due. It is well-settled that,

> [s]entencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Shugars*, 895 A.2d 1270, 1275 (Pa. Super. 2006).

Here, in explaining its considerations in fashioning Appellant's sentence, the court stated:

> After reviewing presentence, mental health, and [and other] evaluation reports as well as sentencing memoranda submitted by both the Commonwealth and … [Appellant], this [c]ourt imposed a proper sentence in light of … [Appellant's] reckless behavior, the three people he permanently injured or killed, and his rehabilitative needs. When imposing a sentence, a court shall follow the general principle that the sentence imposed calls for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and the community, and the rehabilitative needs of the defendant. 42 Pa.C.S. § 9721(b). When a sentencing court is informed by presentence and mental health reports, it is fair to presume it properly weighed any aggravating or mitigating factors. **Commonwealth v. Conklin**, 275 A.3d 1087, 1098 (Pa. Super. 2022) (citing **Commonwealth v. Fowler**, 893 A.2d 758, 766-67 (Pa. Super. 2006)).
>
> With … [Appellant's] prior record score of zero and an offense gravity score ("OGS") of ten, the standard range guideline sentence for Homicide by Vehicle while DUI is 22-36 +/- 12 months of incarceration, with a mandatory minimum of three years of incarceration. This [c]ourt imposed the mandatory minimum sentence of three to six years of incarceration. With an OGS of nine, the standard range guideline sentence for Aggravated Assault by Vehicle while DUI is 12-24 +/- 12 months of incarceration. This [c]ourt imposed standard range sentences of two to four years of incarceration for each count.
>
> … [Appellant] knowingly chose to drive on the highway, at night, after smoking marijuana, drinking throughout the day, and getting into a bar fight. Early that day, … [Appellant] drank a Steel Reserve and a Long Island Iced Tea while smoking marijuana. Later that night, … [Appellant] began taking shots of tequila at his cousin's house, and shots of Hennessy at the bar. He continued drinking even though he was already "drunk as shit[,] … stumbling and shit." He then got into a fight with bar patrons, after which he left and started driving at speeds of more than seventy-five miles per hour, tailgating, and weaving between cars. Fifteen minutes later, he rear-ended the Uber vehicle, a Hyundai Elantra sedan stopped on the shoulder of I-676 with its

- 10 -

hazard lights activated, killing one person and seriously injuring two others. [*See*] N.T. [Plea] … at 22.

… [Appellant's] actions devastated the lives of the victims and their families. The decedent, a 21-year-old college student who was sitting in the backseat of the driver's side of the vehicle, died of multiple blunt impact injuries. … [Appellant] hit the vehicle so hard that responders on the scene were unable [to] remove the decedent from the backseat and had to transport the vehicle to the Medical Examiner's office to extract her. The impact of … [Appellant's] vehicle caused deep cuts on her neck, disarticulation of her spine, transection of the spinal cord, hemorrhaging in her brain, and a fractured pelvis. She had a positive impact on each of her friends' and family members' lives, as shown by the sheer number of people — nineteen — who testified or wrote letters to the [c]ourt on her behalf, including her parents, grandparents, sister, brother-in-law, teachers, friends, and her boyfriend. N.T. [Sentencing], 4/28/23[,] at 19-71.

Bobbi Ann Gubbei, a close friend of the decedent who was seated in the backseat of the passenger side at the time of the crash, has been permanently damaged, emotionally and physically. She developed a fear of riding in cars, and spent the last three years recovering from her injuries, meeting with doctors, giving statements, and grieving her friend, rather than spending her early 20s in school, making friends, and enjoying life as most college students do. She still struggles to walk, sit up, and sleep due to her injuries, which include damage to her spinal cord, multiple fractures, a shattered pelvis and metal implants in her leg. She has permanent back and neck injuries, a high chance of developing arthritis, and may not be able to have children due to screws in her pelvis. Daniel Charles, the victim who drove the Uber, suffered a brain injury and bruises to his body.

While this [c]ourt considered the substantial impact of … [Appellant's] actions on the victims and their families, it also took into account … [Appellant's] rehabilitative needs. … [Appellant] had numerous citations for driving with an expired license, driving with a suspended registration, and driving with a fictitious plate. While … [Appellant] has made an effort to begin rehabilitation through the Options Drug and Alcohol Program and voluntary parenting classes while incarcerated, he has not fully appreciated the seriousness of the offense. Although … [Appellant] apologized to the victims and their friends and family and asked their forgiveness, he still made excuses for his behavior, blaming his

excessive drinking on the death of his cousin a few days before the incident. He also failed to turn himself in for nearly a year until he had to be apprehended by U.S. Marshals. N.T. [Sentencing] … at 10-15; [*id.* at] 104-08; N.T. [Plea] at 22.

As this [court] imposed a sentence that reflects … [Appellant's] callous choice to drive recklessly while inebriated and took all relevant factors into account, … [Appellant's] claims fail. This [c]ourt did not abuse its discretion by imposing seven to fourteen years of incarceration, given the catastrophic impacts on the victims' physical and emotional health and the need to protect the public from the consequences of … [Appellant's] abuse of alcohol and marijuana before getting behind the wheel.

For the foregoing reasons, … [Appellant's] judgment of sentence should be affirmed.

TCO at 6-8.

Given the record before us, and the court's thorough discussion of its sentencing decision set forth in its opinion, we would conclude that the court did not abuse its ample sentencing discretion in imposing an aggregate term of 7 to 14 years' incarceration in this case. Although the Commonwealth offered a plea deal including a slightly lesser term of 6 to 12 years' imprisonment, Appellant rejected that offer. Thus, the court was not in any way bound to impose, or even required to consider, that offer of a more lenient sentence.

Additionally, regarding Mr. Charles' absence from the sentencing hearing, the trial court correctly observed that "victims are not required to appear at sentencing, and while victim-impact testimony can be helpful, it is not required for a court to properly impose a sentence." TCO at 5 (citing, *inter alia*, **Commonwealth v. Hitcho**, 123 A.3d 731, 761 (Pa. 2015) (noting that victim statements are simply one method of informing the sentencing

court about the harm caused by a crime)). Here, the court was informed of the facts underlying the aggravated assault of Mr. Charles, and the injuries he sustained. Therefore, the court had sufficient information to justify the sentence it imposed on Appellant without Mr. Charles' victim-impact statement or testimony.

Moreover, in regard to Mr. Charles' being named as a defendant in a civil lawsuit, the trial court pointed out that,

> [w]hile civil lawsuits are not a factor in criminal sentencing, this [c]ourt was aware that there was a civil suit alleging that … [Appellant], the victim who was driving the car, and others were negligent. But even if other actors were partially responsible for creating the conditions of the crash, it was … [Appellant's] reckless driving while heavily intoxicated that killed the decedent and severely injured the other two victims.

*Id.* at 5-6 (citations to the record omitted). We agree. The civil suit is irrelevant to Appellant's sentencing claim.

Accordingly, even if Appellant's issues constituted substantial questions for our review, we would conclude that the trial court did not abuse its discretion in fashioning his sentence. Thus, his sentencing challenges are frivolous. Our independent review of the record reveals no other, non-frivolous claims that Appellant could raise herein. Accordingly, we affirm his judgment of sentence and grant counsel's petition to withdraw.

Judgment of sentence affirmed. Petition to withdraw granted.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/24/2024