J-S13024-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHANE BROLLY | : | |
| | : | |
| Appellant | : | No. 2720 EDA 2022 |

Appeal from the Judgment of Sentence Entered May 19, 2022
In the Court of Common Pleas of Bucks County
Criminal Division at CP-09-CR-0002526-2021

BEFORE:   NICHOLS, J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY MURRAY, J.:                            **FILED MAY 25, 2023**

Shane Brolly (Appellant) appeals from the judgment of sentence imposed after he pled guilty to eight counts of recklessly endangering another person; five counts each of aggravated assault by vehicle while driving under the influence (DUI), aggravated assault by vehicle, accidents involving death or serious bodily injury; and one count each of DUI – general impairment, DUI – highest rate of alcohol, driving at unsafe speed, reckless driving, and driving within single lane.[1]  We affirm.

The trial court detailed the underlying facts as follows:

On March 27, 2021, Appellant['s] string of reckless conduct forever altered the lives of at least a dozen people.  That day,

---

[*] Former Justice specially assigned to the Superior Court.

[1] *See* 18 Pa.C.S.A. § 2705; 75 Pa.C.S.A. §§ 3735.1(a), 3732.1, 3742.1(a)(1), 3802(a)(1), 3802(c), 3361, 3736(a), 3309(1).

Appellant borrowed his uncle's red GMC truck ("GMC") and picked up his friend, Eoin Quinn ("Quinn"), with a plan to spend the afternoon hitting golf balls at the Burlholme Golf Center ("Golf Center"), 401 Cottman Avenue, Philadelphia, Pennsylvania. N.T. 1/06/2022, p. 27. On their way to the Golf Center, Appellant and Quinn stopped at Madonna's Beer Distributor in Montgomery County, Pennsylvania and purchased two (2) 12-packs of seltzers. *Id.* at 27. The young men drank their seltzers for a few hours at the Golf Center. *Id.* at 27-28. Next, Appellant and Quinn [] drove to a pub in Philadelphia, ate a meal, and consumed one Guinness beer each. *Id.* at 28. After finishing their food, Appellant and Quinn picked up a third friend, Matt Lawson ("Lawson")[,] and drove to Paddy Whacks Bar ("Paddy Whacks"), 9241 Roosevelt Boulevard, Philadelphia, Pennsylvania. *Id.* at 28. At this point, Appellant had been drinking alcohol for at least four (4) hours, and Law Enforcement later discovered nineteen (19) empty seltzer cans in the GMC's backseat. *Id.* at 23-24.

On the way to Paddy Whacks, Appellant veered into the lane next to him and side-swiped a vehicle traveling in the same direction. *Id.* at 29. The two cars pulled over to the side of the road and Appellant offered to pay the driver $100.00 if he agreed not to report the accident. *Id.* This individual accepted the payment and drove away. *Id.* Appellant, Quinn, and Lawson then resumed their journey to Paddy Whacks, pulling up at approximately 7:20 P.M. *Id.* Appellant had previously agreed to put the GMC's keys behind the bar when they arrived, but he never did. *Id.* at 28. About two and a half (2.5) hours later, after consuming another Guinness beer, several shots [of liquor], mixed drinks, and one Corona beer, the bartender at Paddy Whacks cut Appellant off and refused to serve him. *Id.* at 30. This refusal agitated Appellant, and he was asked to leave. *Id.* at 31.

Throughout the evening, Tiffany Zaborowski ("Zaborowski"), who did not know Appellant prior to this incident, had watched Appellant struggle to walk, spill his drinks, and attempt to start an altercation when he was told to leave [the bar]. *Id.* As Appellant, Lawson, and Quinn exited the bar, Zaborowski realized that Appellant planned to drive, and she followed them outside. *Id.* A complete stranger before that night, Zaborowski was so concerned about the danger of Appellant driving in his current state that she begged him not to get behind the wheel. *Id.* Lawson joined her, asking Appellant to spend the

night at his house so he could drive home in the morning. *Id.* at 32. As their requests were ineffective, Zaborowski then pulled out her cell phone and offered to call Appellant an Uber [rideshare driver,] so [Appellant] could get to his destination safely. *Id.* at 31. Again, Appellant refused. *Id.* Even as Appellant climbed into the GMC and started its engine, Zaborowski and Lawson stood outside the front passenger door, pleading with him. *Id.* at 32. They even tried to block Quinn from entering the GMC, begging him not to get in, but Quinn bolted around them and hopped into the backseat on the driver's side. *Id.*

As Zaborowski pled with Appellant in the Paddy Whacks parking lot, four (4) young women were concluding their first evening of spring break with celebratory ice cream. Exhibit C-1. Seventeen-year-old J.M., seventeen-year-old A.C., sixteen-year-old T.D., and sixteen-year-old J.A. subsequently piled into J.A.'s Mazda SUV ("Mazda") and started their journey to T.D.'s home for a sleepover. N.T. 01/06/2022, p. 22. The girls were singing in unison to a song on the radio as they headed southbound on Bridgetown Pike, Bucks County, Pennsylvania. *Id.* As they traveled south, Appellant was driving northbound on Bridgetown Pike. *Id.* at 23-24. Appellant drove up [behind] a Nissan Murano ("Nissan"), occupied by Lyuobov Zagorodny, Kateryna Sulima, and Pavlo Sulima, and decided to try and pass them. *Id.* at 23. Meanwhile, Emily Lohin ("Emily") and her husband Michael Lohin ("Michael") were sitting in the living room of their home on Bridgetown Pike, winding down after a day at the aquarium with their two children. *Id.* at 19. As this couple enjoyed their quiet evening, Appellant accelerated and swerved the GMC into the southbound lane of oncoming traffic to pass the Nissan. *Id.* at 23-24. At a speed of approximately seventy (70) miles per hour, Appellant drove head on into the oncoming Mazda, stopping it dead in its tracks. *Id.* at 34. Emily and Michael later recalled that the force of the impact was so strong that its vibration shook the walls of their home. Sentencing Exhibit C-2, p. 9. Crash Reconstruction Expert Chief Steve Mawhinney ("Chief Mawhinney") was able to determine from the GMC's event data recorder that Appellant never hit the brake. N.T. 01/06/2022, p. 33. In fact, Appellant did not take his foot off the gas pedal until one (1) second before he made impact, hitting the Mazda with such force that it was violently thrown backward off the roadway, where it rolled before reaching its final resting place. *Id.* at 34. As the Mazda rolled, Appellant's GMC shot skyward before slamming directly atop the Nissan he had tried to pass.[1] *Id.* at 24.

[FN[1] Fortunately, the three passengers in the Nissan were not significantly harmed.]

Immediately after the crash, Emily and Michael heard screams coming from the road. Sentencing Exhibit C-2, p. 9. The couple opened their front door to see three (3) significantly damaged vehicles strewn about. N.T. 01/06/2022, p. 19. Emily called 911 to report the accident as Michael rushed to the scene to assess the damage. *Id.* Michael saw the Mazda's engine engulfed in flames and he ran inside to retrieve his fire extinguisher. *Id.* As he and his neighbor, Eli Bielawksy ("Bielawksy") put the fire out, they could hear cries from within the Mazda intensify. *Id.* at 19, 22. Once they extinguished the flames, Michael removed the Mazda's sunroof and was immediately met with outstretched arms as the girls grasped for him. *Id.* at 20. Michael took off his shirt and used it as a barrier to protect the girls from broken glass. *Id.* He then removed J.M. from the rear passenger's seat, her face completely covered in blood. *Id.* Next, Michael pulled A.C. up and out of the rear driver's seat. *Id.* At this point, emergency personnel had arrived on the scene, and they helped [Michael] remove T.D. from the front passenger seat. *Id.* at 21. J.A. was still trapped inside with only eight (8) inches between her legs and the steering wheel, as the force of the impact had pushed the engine compartment into the Mazda's interior. *Id.* Hanging upside-down, J.A. screamed for help as she fought to stay awake. *Id.* Officer Timothy Friel ("Officer Friel") of Northampton Township Police Department held J.A.'s hand as emergency personnel worked to free her, feeling her grip loosen each time she lost consciousness. *Id.* Emergency personnel had to completely remove the Mazda's roof in order to retrieve her, at which point she was flown by helicopter to Temple University Hospital, 3401 N. Broad Street, Philadelphia, Pennsylvania ("TU Hospital") for emergency surgery. *Id.* at 21-22, 37.

As a throng of workers did what they could for the girls, Michael observed [Appellant and Quinn] laying shirtless on their backs near the scene of the accident. *Id.* at 22. As he approached, Michael could smell the odor of alcohol emanating from them, even from a distance. *Id.* Officer Friel also later reported that he detected an odor of alcohol on Appellant's breath. *Id.* Appellant was transported to St. Mary Medical Center, 1201 Langhorne Newtown Road, Langhorne, Bucks County, Pennsylvania ("St. Mary's") for medical treatment, where hospital

staff took numerous vials of blood and sent them to a lab for testing. *Id.* at 25. Law Enforcement obtained Appellant's toxicology report pursuant to a search warrant, which indicated that Appellant had a Blood Alcohol Concentration ("BAC") of .211 g/100 mL. *Id.* at 26.

The young women in the Mazda [suffered] extensive and life-threatening injuries. *Id.* J.A. suffered from a closed mandibular jaw fracture and deep lacerations to her face, cheek, and lip. *Id.* at 37. She had an open right femoral shaft fracture, an open right patella fracture, an upper rib fracture, a left wrist fracture, ligamentous injuries to her left knee, PCL and LCL injuries, and significant bruising to her extremities. *Id.* at 37-38. Upon [J.A.'s] admission to TU Hospital, her medical team had to employ nasal intubation to help her breathe. *Id.* at 37. J.A.'s jaw fracture was surgically closed using screws, plates, and arch bars, and she had to have a second surgery in April of 2021 to remove the bars. *Id.* In December of 2021[, J.A.] underwent a third surgery, a bone graft, to treat her right femoral shaft fracture that had not properly healed. *Id.* J.A. suffered permanent scarring to her face, left hand, right leg, pelvis, and hip. *Id.* at 38.

T.D., who was seated in the front passenger seat at the time of the accident, was transported to Thomas Jefferson Hospital, 1200 Old York Road, Abbington, Bucks County, Pennsylvania ("Thomas Jefferson") for treatment of her injuries. She suffered from multiple blunt trauma injuries with lacerations to her lower abdomen, groin, and face. *Id.* at 38-39. She had a gross deformity and closed fracture of the left humorous bone in her arm and a closed fracture of the left femur, which required surgery and placement of pins and rods. *Id.* at 39. T.D. also suffered from a ten-centimeter laceration over her left knee with exposed bone, a fractured left ankle, a bowel perforation which required abdominal surgery, and a small bowel resection. *Id.*

J.M., seated in the rear passenger's side of the vehicle at the time of the crash, was transported to St. Mary's for treatment. *Id.* at 39. Upon arrival, her doctors intubated her using a tracheal tube and connected her to a ventilator so she could breathe. *Id.* at 40. J.M.'s injuries included a concussion, edema of the thoracic spinal cord, multiple fractured ribs, a fractured nasal bone, a fractured right side orbital bone, a traumatic brain injury, multiple lacerations on her head, shoulder, neck, and face, multiple abrasions, numerous contusions, and three fractured vertebrae

(T6, T7, and T8), which required surgical repair via laminectomy and fusion. *Id.* at 39-40. Her face is permanently scarred. *Id.* at 41. A.C., seated in the back seat of the driver's side, was transported to St. Mary's to receive treatment for a traumatic brain injury, a nasal bone fracture, broken thumb, fractured right forearm, a vitreous detachment in her right eye, multiple contusions, and a lacerated spleen. *Id.* Quinn was also significantly injured in the crash. He was treated at Thomas Jefferson for a traumatic abdominal hernia, left apical pneumothorax, a perforated bowel, and a lacerated colon. *Id.*

Trial Court Opinion, 12/7/22, at 1-6 (footnote 1 in original, remaining footnotes omitted).

The Commonwealth charged Appellant with numerous crimes. On January 6, 2022, Appellant entered the aforementioned guilty plea. The trial court ordered the preparation of a pre-sentence investigation report (PSI).

On May 19, 2022, the trial court sentenced Appellant, within the **standard range** of the sentencing guidelines, to an aggregate 15 years and 3 days — 30 years and 6 months in prison. The sentence was less than the sentence recommended in Appellant's PSI. Notably, the trial court ordered the sentences for five of the aggravated assault convictions to run **consecutively**.

Appellant timely filed a post-trial motion for reconsideration of sentence on May 26, 2022.[2] The trial court held a hearing on September 29, 2022, and thereafter denied the motion. Appellant timely appealed.[3]

Appellant presents a single issue for review: "Did the lower court err in imposing a sentence of total confinement of not less than fifteen years and three days nor more than thirty years and six months?" Appellant's Brief at 4.

Appellant challenges the discretionary aspects of his sentence, from which there is no absolute right to appeal. *Commonwealth v. Summers*, 245 A.3d 686, 691 (Pa. Super. 2021). Here, where Appellant has preserved his sentencing challenge in a timely post-sentence motion, he must (1) include in his appellate brief a Pa.R.A.P. 2119(f) concise statement of reasons relied upon for allowance of appeal; and (2) show that there is a substantial question that the sentence is not appropriate under the Sentencing Code. *Id.*

---

[2] Appellant's motion for reconsideration consisted of a single sentence. *See* Pa.R.Crim.P. 720(B)(1)(a) (providing all post-sentence "requests for relief from the trial court shall be stated with specificity and particularity…."); *see also Commonwealth v. Holmes*, 461 A.2d 1268, 1273 (Pa. 1983) (explaining specificity requirement). The trial court overlooked this defect.

[3] Appellant purports to appeal from the trial court's September 29, 2022 order denying his post-sentence motion. However, "[i]n a criminal action, [an] appeal properly lies from the judgment of sentence made final by the denial of post-sentence motions." *Commonwealth v. Jackson*, 283 A.3d 814, 816 n.1 (Pa. Super. 2022) (quoting *Commonwealth v. Shamberger*, 788 A.2d 408, 410 n.2 (Pa. Super. 2011) (*en banc*)).

Appellant has included a Rule 2119(f) statement in his brief. Appellant's Brief at 15-16. Further, he presents a substantial question. *See* *Commonwealth v. Knox*, 165 A.3d 925, 929-30 (Pa. Super. 2017) ("A claim that the trial court focused exclusively on the seriousness of the crime while ignoring other, mitigating circumstances … raises a substantial question."); *see also Commonwealth v. Harvard*, 64 A.3d 690, 701 (Pa. Super. 2013) (same). Also, under the circumstances of this case, we conclude Appellant's claim that the imposition of consecutive sentences resulted in an unreasonable and unduly harsh aggregate sentence raises a substantial question. *Commonwealth v. Caldwell*, 117 A.3d 763, 770 (Pa. Super. 2015) (*en banc*) ("an excessive sentence claim—in conjunction with an assertion that the [trial] court failed to consider mitigating factors—raises a substantial question."); *Commonwealth v. Bonner*, 135 A.3d 592, 604 (Pa. Super. 2016) (same); *cf. Commonwealth v. Dodge*, 77 A.3d 1263, 1270 (Pa. Super. 2013) ("a bald claim of excessiveness due to the consecutive nature of a sentence will not raise a substantial question."). Accordingly, we review the merits of Appellant's sentencing issue.

We are mindful that sentencing "is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." *Commonwealth v. Barnes*, 167 A.3d 110, 122 n.9 (Pa. Super. 2017) (*en banc*) (citation omitted).

> In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by

reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Fullin*, 892 A.2d 843, 847 (Pa. Super. 2006) (citation omitted).

The rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it.

*Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010) (citation omitted).

The Pennsylvania Supreme Court has explained:

The reason for this broad discretion and deferential standard of appellate review is that the sentencing court is in the best position to measure various factors and determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it. Simply stated, the sentencing court sentences flesh-and-blood defendants and the nuances of sentencing decisions are difficult to gauge from the cold transcript used upon appellate review. Moreover, the sentencing court enjoys an institutional advantage to appellate review, bringing to its decisions an expertise, experience, and judgment that should not be lightly disturbed.

*Commonwealth v. Pasture*, 107 A.3d 21, 27-29 (Pa. 2014) (citations and quotation marks omitted).

The Sentencing Code provides that "the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. §

9721(b). "A sentencing court has broad discretion in choosing the range of permissible confinements that best suits a particular defendant and the circumstances surrounding his crime." ***Commonwealth v. Celestin***, 825 A.2d 670, 676 (Pa. Super. 2003) (citation omitted). The court "need not undertake a lengthy discourse for its reasons for imposing a sentence or specifically reference the statute in question, but the record as a whole must reflect the sentencing court's consideration of the facts of the crime and character of the offender." ***Commonwealth v. Schutzues***, 54 A.3d 86, 99 (Pa. Super. 2012) (citation omitted).

The trial court must also consider the sentencing guidelines. ***See Commonwealth v. Sheller***, 961 A.2d 187, 190 (Pa. Super. 2008). Here, it is undisputed that the sentences for each conviction were within the standard range of the sentencing guidelines. ***See*** Appellant's Brief at 18, 22; Commonwealth Brief at 14-15. Therefore, we may only disturb Appellant's sentence if "the case involves circumstances where the application of the guidelines would be clearly unreasonable." 42 Pa.C.S.A. § 9781(c)(2); ***see also Commonwealth v. Raven***, 97 A.3d 1244, 1254 (Pa. Super. 2014).

Appellant claims the trial court abused its discretion in imposing a manifestly excessive and unreasonable aggregate sentence and failed to consider mitigating factors. ***See*** Appellant's Brief at 17-24. Appellant asserts that although the sentences were within the standard range, the trial court abused its discretion in imposing five of his sentences consecutively:

[T]he sentencing guidelines for each of the five aggravated assaults, in the standard range[,] recommended a sentence of thirty-six to fifty-four months of incarceration.

The five consecutive sentences, resulting in a period of incarceration of fifteen years to thirty years was excessive, considering Appellant's remorse, guilty plea, immediate acknowledgement of guilt, lack of a criminal record, strong character references, prison conduct, mitigating evidence and family support.

*Id.* at 18-19 (citations to reproduced record omitted). Appellant contends the trial court failed to consider many mitigating factors, including the expert psychological evaluation of Appellant, *id.* at 19; Appellant's history and diagnosis of "severe alcohol disorder, in sustained remission," *id.* at 20; Appellant's character references, *id.*; and Appellant's remorse and allocution, *id.* at 21.

Conversely, the Commonwealth claims the trial court "explicitly considered all mitigating factors and the sentence imposed reflected the[ court's] consideration [of all mitigating factors]." Commonwealth Brief at 16-17. The Commonwealth argues:

[T]o the extent [Appellant] argues that the court erred in imposing consecutive sentences for each victim, this claim is [] meritless. It has long been the law in this Commonwealth that a defendant is not entitled to a volume discount and that such a challenge does not even raise a substantial question — let alone a meritorious claim. ***Commonwealth v. Gonzalez-DeJesus***, 994 A.2d 595, 599 (Pa. Super. 2010) ("Thus, in seeking a reduction of his sentence, appellant appears to seek a "volume discount" because the various crimes occurred in one continuous spree. This is simply not a challenge which has the ring of raising a substantial question."). [Appellant's] abhorrent conduct in continuing to drive while exceedingly intoxicated, following a prior accident and the repeated[] pleas of his friends to choose an alternative means of

- 11 -

transportation, resulted in serious and unfathomable injuries to numerous people.

It was certainly not an abuse of discretion to impose separate sentences to account for each of the lives he changed forever. Moreover, the sentencing court declined to impose sentence on numerous remaining counts which did not merge for purposes of sentencing.

Commonwealth Brief at 17.

Upon review, we are persuaded by the trial court's reasoning:

[Appellant's] **sentence imposed is within the standard range** of [the] guidelines. Further, it is **less** than his PSI's recommended term of incarceration, which proposed an aggregate sentence, within the **aggravated** range of [the] guidelines, amounting to not less than twenty-seven and a half (27.5) nor more than fifty-five (55) years' incarceration. 09/29/2022, p. 19. Instead, this court imposed an aggregate sentence of no less than fifteen (15) years and three (3) days[] nor more than thirty (30) years and six (6) months' incarceration in a state correctional facility. N.T. 05/19/2022, pp. 38-40.

**In fashioning Appellant's sentence, this court considered mitigating factors**. As to Appellant's character, this court contemplated Appellant's exemplary conduct while incarcerated at the Bucks County Correctional Facility ("BCCF"), his participation in substance abuse-related programming at BCCF, and the letters submitted by Appellant's family and friends, which described him as kind and hardworking. *Id.* at 33. **These factors contributed to this court's decision to hand down a lesser sentence than that which was recommended by Appellant's PSI**.

First, this court considered the facts of the case. *Id.* at 35. Appellant argued in his motion to reconsider that one (1) solitary action resulted in injuring five (5) individuals. This court vehemently disagrees. Beginning with a trip to the driving range at 3:00 P.M., Appellant committed numerous acts that led him to drive head-on into that Mazda without so much as tapping the brake pedal. Appellant intentionally chose to drink numerous seltzers at the driving range. He then chose to have a Guinness at a bar in Philadelphia. He next chose to payoff a man he

sideswiped on the way to Paddy Whacks so he could continue his night out. He subsequently opted not to put his keys behind the bar at Paddy Whacks, as he said he would, and instead drank numerous shots, mixed drinks, and beers while maintaining his plan to drive. Lastly, he chose to get behind the wheel of the GMC, which he did not own and did not have the legal authority to drive, after the bartender refused to serve him further.

Appellant knew his conduct was dangerous. At the very least, Zaborowski, a stranger, told Appellant drunk driving was not worth it. There are seldom times in an individual's life where he has the opportunity to reflect on his options before making [a] terrible [] decision. Hitting a vehicle on the way to Paddy Whacks, Zaborowski intervening and offering to order an Uber, and Lawson inviting Appellant to sleep at his home for the night, those moments should have given Appellant pause, as each were chances to reconsider. Yet, despite the numerous opportunities afforded to Appellant to opt out of driving, he disregarded each one. Appellant's conduct on March 27, 2021 was abhorrent. As such, this court's sentence was carefully constructed in consideration of every intentional decision Appellant made that night.

Second, this court considered the long-lasting harm Appellant's actions caused the victims. Quinn still struggles with his injuries - he reported in his impact statement that he continues to suffer physical pain and feels anxiety as a passenger in a vehicle. Sentencing Exhibit C-2, p. 38. The individuals in the Nissan that Appellant tried to pass are also victims of this crime - they were lucky they did not suffer extensive harm, but their vehicle was damaged. However, the most significant impact was on those four (4) young women. They have permanent scars, continue to cope with the pain from their injuries, and still suffer from symptoms of anxiety, depression, and post-traumatic stress disorder. Appellant's conduct further cost these women the time they lost to the recovery process. These teenagers missed months of school and could not participate in formative moments, such as junior prom or the annual powderpuff game, due to the severity of their injuries.

Their families also bear the weight of Appellant's actions. J.M.'s mother missed months of work so she could tend to her daughter. *Id.* at 30-31. J.A.'s sister and A.M.'s brother have struggled with watching their siblings' labored recovery. *Id.* at

27, 36-37. A.M.'s mother watched her daughter temporarily lose her will to live, and she continues to feel helpless in the face of A.M.'s continued mental health struggles. *Id.* at 36-37. Each family has watched their girls transform overnight, from healthy young women to women with life-altering injuries.

Third, this court considered the impact on the community, as Appellant's harm reached beyond the five (5) individuals that were hospitalized that night. For example, Emily and Michael, whose heroic actions saved the lives of those four (4) girls, both suffer from panic attacks and generalized anxiety linked to the traumatic nature of the crash. *Id.* at 9-10. Additionally, their two children are now seeing a counselor, in part to cope with seeing their parents return home that night covered in the girls' blood. *Id.* This incident has left an imprint on their lives such that the couple is considering selling their home to avoid a reminder of the accident every time they leave their driveway. *Id.*

**This sentence, which was within the standard range of the sentencing guidelines, balanced these impacts with Appellant's rehabilitative needs**. This period of incarceration will provide Appellant sufficient time to reflect on the gravity of his conduct and to appreciate its long-lasing consequences. Appellant has demonstrated an ability to disregard numerous opportunities to make the right decision, and this court handed down his sentence in hopes that he takes this chance to learn from his mistakes and take full responsibility for his actions. Moreover, this court could have handed down separate sentences for the two counts that did not merge, aggravated assault while DUI, 75 Pa.C.S. § 3735.1(a), as well as accident while not properly licensed, 75 Pa.C.S. § 3742.1(a)(1), and opted not to. N.T. 09/29/2022, pp. 15-16. Had this court sentenced Appellant to consecutive terms of incarceration on those counts, Appellant's aggregate sentence would have remained in the standard range … and nonetheless would have amounted to roughly twenty-two and a half (22.5) to forty-five (45) years' incarceration. *Id.* at 21.

For these reasons, Appellant's sentence was appropriately in the standard range for aggravated assault - causes injury with extreme indifference and for DUI. This sentence did not violate any sentencing statutes and was not contrary to the fundamental norms of the sentencing process. Therefore, this court was well within its discretion to fashion Appellant's sentence and this appeal should be denied.

Trial Court Opinion, 12/7/22, at 11-14 (emphasis added; some capitalization and citations altered).

The trial court's reasoning has ample support in the record and law. *See id.* We further note that where the court has the benefit of a PSI, "it will be presumed that [it] was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Conklin*, 275 A.3d 1087, 1098 (Pa. Super. 2022) (citation omitted). "[W]here the court has been so informed, its discretion should not be disturbed." *Commonwealth v. Ventura*, 975 A.2d 1128, 1135 (Pa. Super. 2009); *see also Commonwealth v. Fowler*, 893 A.2d 758, 767 (Pa. Super. 2006) ("The sentencing judge can satisfy the requirement that reasons for imposing sentence be placed on the record by indicating that he or she has been informed by the pre-sentencing report; thus properly considering and weighing all relevant factors." (citation omitted)).

In sum, we discern no abuse of the trial court's sentencing discretion. Contrary to Appellant's claim, his sentence is neither excessive nor unreasonable, and the court did not abuse its discretion in imposing some of the sentences consecutively. *See Commonwealth v. Johnson*, 873 A.2d 704, 709 fn.2 (Pa. Super. 2005) (stating that imposition of consecutive sentences for two DUI offenses was solely within the trial court's discretion, and did not in and of itself rise to the level of a substantial question where appellant's "offense was more reprehensible than a 'typical' DUI offense.");

*Moury*, 992 A.2d at 171 (stating "where a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code."); *Commonwealth v. Zirkle*, 107 A.3d 127, 133 (Pa. Super. 2014) (defendants are not entitled to a "'volume discount' for [their] crimes by having all sentences run concurrently." (citation omitted)). Appellant's aggregate sentence is neither "grossly disparate to [Appellant's] conduct nor does it viscerally appear as patently 'unreasonable.'" *Commonwealth v. Mastromarino*, 2 A.3d 581, 589 (Pa. Super. 2010) (citation and quotation marks omitted). Consequently, we will not disturb Appellant's sentence. *See Barnes*, *supra*.

Judgment of sentence affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 5/25/2023*

- 16 -