J-S18009-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMIR LOMAX | : | |
| | : | |
| Appellant | : | No. 2127 EDA 2022 |

Appeal from the Judgment of Sentence Entered June 16, 2022
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0008809-2019

BEFORE:   PANELLA, P.J., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.:                    **FILED AUGUST 18, 2023**

Jamir Lomax appeals the judgment of sentence entered by the Philadelphia Court of Common Pleas following his convictions of third-degree murder, Violations of the Uniform Firearms Act ("VUFA"), and Recklessly Endangering Another Person ("REAP"). Lomax claims the trial court abused its discretion by failing to order a mistrial after the prosecutor infringed upon the investigatory role of the police by instructing a detective not to conduct follow-up interviews with eyewitnesses. Additionally, Lomax claims the trial court erred by imposing two maximum sentences, totaling 22 ½ - 45 years' incarceration, without properly considering the relevant mitigating factors. Upon review of the record, we find his claims without merit and hereby affirm.

_____

[*] Former Justice specially assigned to the Superior Court.

Lomax was charged with shooting and killing Monae Burrell during a shootout that occurred at Philadelphia residence. The primary factual dispute at trial was whether Lomax, who conceded that he was present for the shooting, was one of the people shooting. In support of its contention that Lomax initiated the gun battle, the Commonwealth presented the following evidence.

August 22, 2019, Burrell was attending a gathering at the home of a friend who had been shot and killed earlier that day. *See* N.T. 4/11/2022, at 7. Burrell and her friends, including Monifah Foreman, decided to leave the gathering and visit the scene of the earlier shooting that occurred two blocks away but then returned to the gathering to join the others in mourning. *See id.* at 13-15. Burrell, Foreman, and others were standing at the bottom of the steps in front of the house near another attendee, Daquan "Dae-Dae" Weaver. *See id.* at 15-21. About a dozen women and children were gathered on the porch at the top of the stairs. *See id.* 7-12, 17-23.

Lomax rode his bicycle towards the home before setting the bicycle down about two houses away from the gathering. *See id.* at 25-27. He said, "What's up?" to Weaver before he reached his right hand into his front waistband, pulled out a semi-automatic handgun, and began shooting towards Weaver. *See id.* Burrell, Foreman, and other attendees ran towards the house for cover while Weaver immediately pulled a gun from his own waistband and began returning fire at Lomax. *See id.* at 27-32.

A bullet fired by Lomax hit the metal railing on the steps causing it to fragment before striking Burrell in the right side of her abdomen as she was running into the house. *See* N.T. 4/12/2022, at 31-32, 45-48. The bullet struck her liver and heart, killing her. *See id.* at 141. Lomax was walking backward while firing the gun when he tripped and fell into a hole caused by construction in the street. *See* N.T. 4/11/2022, at 31-35, 125-128. He then got back up and fled the scene. *See id.*

Lomax was arrested and charged with Third Degree Murder, VUFAs, and REAP. On April 14, 2022, after a bench trial, the court found Lomax guilty of all charges. On June 16, 2022, the trial court sentenced Lomax to a term of 20 to 40 years in prison for third-degree murder, 1 ½ to 3 years for carrying a firearm without a license, and 1 to 2 years for REAP, with no further penalty for carrying a firearm in public. N.T. 6/16/2022 at 77-78. All sentences were imposed consecutively. The aggregate sentence totaled 22 ½ to 45 years' incarceration.

In his first issue on appeal, Lomax claims the trial court abused its discretion by declining to order a mistrial due to prosecutorial misconduct. Lomax argues the prosecutor improperly infringed upon the investigatory role of the police by instructing a homicide detective not to conduct follow-up interviews with two eyewitnesses, Foreman and Dejah Fisher. Lomax argues this interference hampered his ability to formulate a self-defense argument and impeach the Commonwealth's witnesses.

"[A] mistrial is an extreme remedy only warranted when the prejudice to the movant cannot be ameliorated to ensure a fair trial." ***Commonwealth v. Risoldi***, 238 A.3d 434, 458 (Pa. Super. 2020). A trial court's denial of a party's motion for a mistrial will not be disturbed absent an abuse of discretion. ***See Commonwealth v. Wilson***, 273 A.3d 13, 21 (Pa. Super. 2022). More than a mere error of judgment, "an abuse of discretion will be found when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record." ***Commonwealth v. Saez***, 225 A.3d 169, 177 (Pa. Super. 2019) (citation omitted).

The due process clause of the fourteenth amendment to the United States Constitution and the double jeopardy clause of the Pennsylvania Constitution require a prosecutor to disclose exculpatory evidence to a criminal defendant. ***See Brady v. Maryland***, 373 U.S. 83 (1963). Moreover, prosecutors are required to disclose evidence which can be used to impeach a prosecution witness. ***See Giglio v. United States***, 405 U.S. 150 (1972). A due process violation occurs when the prosecutorial misconduct must result in the denial of the defendant's right to a fair trial. ***See Commonwealth v. Cox***, 983 A.2d 666, 685 (Pa. 2009). "Prosecutorial misconduct will justify a new trial where the unavoidable effect of the conduct or language was to prejudice the factfinder to the extent that the factfinder was rendered incapable of fairly

weighing the evidence and entering an objective verdict." ***Commonwealth v. Francis***, 665 A.2d 821, 824 (Pa. Super. 1995).

A ***Brady*** violation arises when the evidence suppressed had a "reasonable probability" that "the result of the proceeding would have been different." ***Commonwealth v. Cousar***, 154 A.3d 287, 301 (Pa. 2017). To establish a ***Brady*** violation, Lomax was required to prove: (1) the prosecution suppressed the evidence, either willfully or inadvertently; (2) the evidence at issue was favorable to the accused, either because it was exculpatory or because it impeached the prosecution's evidence; and (3) prejudice ensued because the result of the trial would likely have been different had the evidence been introduced. ***See Commonwealth v. Sandusky***, 203 A.3d 1033, 1061 (Pa. Super. 2019).

Here, during the detectives' initial interview with Foreman and Fisher, the witnesses did not mention a second shooter was firing back at Lomax. ***See*** N.T. 4/14/22, at 28. When Foreman and Fisher were brought into the police station for an additional interview with Detective Peters, Fisher revealed that there was a second shooter who was returning fire during the shootout. ***See id.*** at 33. Foreman and Fisher's statements during the interview were not written or recorded, and Detective Peters did not include the information about the second shooter in the report he prepared after the interview. ***See id.*** at 23-29.

At trial, Detective Peters explained that he thought Foreman and Fisher needed to be interviewed again but was instructed by District Attorney Krauss not to re-interview them and just let them speak at court. *See id.* at 29. Lomax's attorney moved for a mistrial alleging that the Commonwealth violated *Brady* by failing to memorialize potentially exculpatory evidence from Fisher and Foreman regarding the second shooter. *See id.* at 29-30. The trial court denied the motion for a mistrial because it was not clear the evidence withheld was exculpatory and Lomax had received the information about the second shooter at the preliminary hearing which occurred over a year before the trial. *See id.* at 31-32.

On appeal, the trial court concedes that the prosecutor's interference in the detective's investigation was improper: "[T]his Court believes that [the prosecutor] erred by instructing Detective Peters not to re-interview Foreman and Fisher and that the Commonwealth should have passed the information regarding a second shooter[.]" Trial Court Opinion 12/16/2022, at 9. We agree the record indicates that the Commonwealth suppressed evidence and therefore the first prong of the *Brady* analysis is satisfied.

Lomax argues that the trial court erred in concluding that he had not established the second prong of the *Brady* test: whether the suppressed evidence was exculpatory. "Under *Brady* and subsequent decisional law, a prosecutor has an obligation to disclose all exculpatory information material to the guilt or punishment of an accused, including evidence of an

impeachment nature." ***Commonwealth v. Roney***, 79 A.3d 595, 607 (Pa. 2013). However, "***Brady*** does not require the disclosure of information that is not exculpatory but might merely form the groundwork for possible arguments or defenses[.]" ***Commonwealth v. Ovalles***, 144 A.3d 957, 965 (Pa. Super. 2016) (citation and internal quotation marks omitted). Moreover, "for a defendant to be entitled to a new trial based on the prosecution's failure to disclose information relating to a [witness's] credibility, the defendant must demonstrate that the reliability of the witness may well be determinative of his guilt or innocence." ***Commonwealth v. Simpson***, 66 A.3d 253, 266 (Pa. 2013) (citation omitted).

In its opinion, the trial court cites ***Commonwealth v. Ovalles*** to support its finding that the Commonwealth did not violate ***Brady***. Trial Court Opinion, 12/16/2022 at 9. In ***Ovalles***, an eyewitness in a murder trial admitted to police that he had committed perjury at the preliminary hearing and his testimony would be completely different at trial. ***See Ovalles***, 144 A.3d at 964. Although the detectives had prepared a report based on the witness's initial interview, they did not take notes or prepare a supplemental written report detailing the witness's admission to perjury and inconsistent statements. ***See Id.*** at 966. On appeal, this Court concluded the evidence was not exculpatory because the inconsistent testimony only addressed the color of the appellant's clothing, but the witness was consistent in his identification of the appellant as the only shooter. ***See id.*** at 967.

Here, Lomax argues the evidence regarding the second shooter was exculpatory because "the sequence of shooting was central to the verdict and, on its face, the Record indicates that [Lomax] had a claim of justifiable self-defense given that someone was shooting at [him]." Appellant's Brief at 17. We agree with Lomax, that unlike *Ovalles*, the inconsistent statements and omitted evidence were relevant to defenses that Lomax raised or could have raised.

The charges arose from a shootout in the street which resulted in the death of a bystander. In his second interview with police, Lomax admitted to being present for the shootout, but that he was not one of the two people who were shooting. Accordingly, evidence of a second shooter other than Lomax was relevant and exculpatory. Additionally, Lomax argues the inconsistent statements of Foreman and Fisher and their omission of the second shooter in their initial interview impeaches their testimony and challenges their credibility as eyewitnesses. These inconsistent statements not only undermine the credibility of the witnesses but speak to a key detail in the case that is determinative of Lomax's guilt. Therefore, we conclude the trial court erred in determining that the evidence was not exculpatory.

However, we ultimately agree that Lomax is not entitled to relief on appeal. In order to be entitled to relief, Lomax was still required to establish he was prejudiced by the suppression. *See Commonwealth v. Tedford*, 960 A.2d 1, 30 (Pa. 2008). The Pennsylvania Supreme Court has held, "[a] *Brady*

claim, however, will not afford Appellant relief if he either knew of the existence of the evidence in dispute or could have discovered it by exercising reasonable diligence." ***Commonwealth v. Smith***, 17 A.3d 873, 902–03 (Pa. 2011). Lomax claims the court erred in not declaring a mistrial "because counsel could not have been prepared for trial because of concealment and misconduct." Appellant's Brief at 16. In contrast, the trial court concluded Lomax failed to establish he suffered prejudice due to the suppressed evidence because he received the information at the preliminary hearing:

> That information was provided to [Lomax] at his preliminary hearing, which occurred over two years and four months before his trial. As [Lomax] was provided this information prior to trial, he cannot establish that the alleged ***Brady*** violation so undermined the truth determining process that no reliable adjudication of guilt or innocence could have occurred.

Trial Court Opinion, 12/16/2022, at 9.

At the preliminary hearing held December 4, 2019, Foreman testified about the second shooter who was standing next to her at the bottom of the steps, "I heard – the first gunshot came from [Lomax]. And then he followed up with – the one that was standing next to me followed up and started shooting back at him." N.T., 12/04/2019, Pg 20. Fisher also testified at the hearing that the second shooter was firing back after Lomax initiated the shootout. ***See id.*** at 55. As such, Lomax was aware of Fisher and Foreman's testimony regarding the second shooter over a year before the trial commenced. At trial, the trial court found that ***Brady*** was not violated because the information was "conveyed": "I mean what's saving this right now is

- 9 -

because they testified to it at the preliminary hearing." N.T. 4/14/2022, at 31-12. We cannot fault the trial court's conclusion that Lomax was not prejudiced by the prosecutor's actions because the information was brought to light at the preliminary hearing. Failing to meet the third prong of the **Brady** test, Lomax's claim is without merit and the trial court did not err in denying the motion for mistrial.

Next, Lomax claims the trial court abused its discretion in sentencing him to an aggregate term of 22 ½ to 45 years' incarceration by imposing two consecutive maximum sentences and not properly considering his mental health issues and rehabilitative needs. Additionally, he asserts the trial court improperly weighed discovery disclosures and social media posts allegedly made by Lomax while he was in prison. Lastly, Lomax argues the court failed to take into account the court's time and resources that were saved when he waived his right to a jury trial.

Lomax concedes these arguments constitute a challenge to the discretionary aspects of his sentence. **See** Appellant's Brief at 19. To invoke this Court's jurisdiction over this issue, Lomax must satisfy a four-part test:

> (1) whether appellant has filed a timely notice of appeal, see Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, see Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42. Pa.C.S.A. § 9781(b).

*Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010) (citation omitted; brackets in original).

Here, Lomax preserved his issues through a timely post-sentence motion to modify his sentence and filed a timely appeal. Further, counsel has included the required Rule 2119(f) statement. We therefore review the Rule 2119(f) statement to determine if Lomax has raised a substantial question.

A substantial question exists when an appellant raises a colorable argument that the sentence imposed is either "inconsistent with a specific provision of the Sentencing Code" or is "contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Andrews*, 213 A.3d 1004, 1017 (Pa. Super. 2019). "Additionally, we cannot look beyond the statement of questions presented and the prefatory 2119(f) statement to determine whether a substantial question exists." *Commonwealth v. Provenzano*, 50 A.3d 148, 154 (Pa. Super. 2012).

We conclude that Lomax raised a substantial question that the trial court improperly weighed discovery disclosures and social media posts allegedly made by Lomax while he was in prison and issued a sentence solely based on seeking retribution. *See, e.g., Commonwealth v. Allen*, 24 A.3d 1058, 1064-65 (Pa.Super. 2011) ("[A] claim that a sentence is excessive because the trial court relied on an impermissible factor raises a substantial question." (citation omitted)). Therefore, we shall proceed to address the merits of the claims.

At the sentencing hearing, the court vacated the conviction for VUFA 6105, possession of a firearm prohibited, finding Lomax did not have a conviction or adjudication which qualified as an enumerated offense under the statute. ***See*** N.T. 6/16/22 pg. 8-13. For the other convictions, the court noted the statutory maximums, considered the sentencing guidelines, and reviewed Lomax's juvenile adjudications, arriving at a prior record score of two. ***See id.*** at 8. The guideline range for third-degree murder, deadly weapon used, was 12 to 20 years, with a statutory maximum of 40 years. ***See*** 204 Pa.Code 303.17(b); N.T. 6/16/2022 at 8; 18 Pa.C.S. § 1102(d).

As such, the sentence of 20 to 40 years in prison for third-degree murder was consistent with the guidelines. ***See*** N.T. 6/16/2022 at 77. For carrying a firearm without a license, the guideline range was 1 ½ to 2 ½ years, plus or minus 1 year, with a statutory maximum of 7 years. ***See*** 204 Pa.Code 303.16(a); N.T. 6/16/2022 at 8; 18 Pa.C.S. § 6106(a); ***id.*** § 1103(3). The court sentenced within the guidelines by requiring Lomax serve 1½ to 3 years for carrying a firearm without a license. ***See*** N.T. 6/16/2022 at 77-78.

For REAP, the guideline range was restorative sanctions to 9 months, plus or minus 3 months, with a statutory maximum of 2 years. ***See*** 204 Pa.Code 303.16(a); N.T. 6/16/2022 at 8; 18 Pa.C.S. § 2705; id. § 1104(2). Here, the court-imposed sentence for REAP, 1 to 2 years, was above standard range of the guidelines but within the aggravated range. ***See*** N.T. 6/16/2022 at 78. The court did not impose further penalty for carrying a firearm in public.

*See* N.T. 6/16/2022 at 78. The sentences aggregate to a total of 22½ to 45 years' incarceration, which is less than the 25 to 50 years' sentence recommended by the Commonwealth. *See* N.T. 6/16/2022 at 19.

Lomax argues there is "no justification for two consecutive maximum sentences and this indicates a unitary focus on retribution." Appellant's Brief at 24. At the sentencing hearing, the court expressed concern with the nine infractions that Lomax had while in custody including possession of contraband, tampering with security equipment, fighting other inmates, and threatening prison staff. *See* N.T. 6/16/2022, at 19-20. When taking this into consideration, the court did not seek to punish Lomax for his misbehavior but, instead, found more incarceration time is need for his rehabilitation and the protection of the community:

> And what [the Commonwealth's memorandum is] saying to me is, 'Judge, Mr. Lomax's behavior is a vivid illustration of the fact that even in prison [he] can't comply with the rules of society.' You can't behave yourself. And, therefore, society needs to be protected from you. That you need a very significant period of incarceration because in the limited time you've had in prison there's absolutely no sign that you, in any way, have changed your behavior. And, in fact, it's quite the opposite.

N.T. 6/16/2022, at 20.

Moreover, the trial court explained that the sentence was imposed with the hope that Lomax would be rehabilitated and would successfully re-enter society:

> I do think there is hope for you, and I believe I'm imposing a sentence that should give you hope. You may not look at it that

way, but I'm giving you a sentence that enables you to be released from prison and still be a productive member of society.

N.T. 6/16/2022, at 76.

Upon review of the record, we find that the trial court was not solely seeking retribution but, instead, considered Lomax's rehabilitative needs and the need to protect the public. Therefore, Lomax's first sentencing claim is without merit.

Lomax also contends that the trial court failed to consider his mental health needs. Where a sentencing court has the benefit of a presentence investigation report, it is presumed the court was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. *See Commonwealth v. Conklin*, 275 A.3d 1087, 1098 (Pa. Super. 2022). Here, the court's preparation for sentencing is evident in the sentencing hearing transcript where the court detailed its review of the presentence investigation and mental health reports, the Commonwealth's memorandum, and the victim impact statement. *See* N.T. 6/16/2022 at 7-8. The court explicitly took note of the defendant's mental health evaluation:

> I want to speak for a minute or two about the fact that you were evaluated by a mental health examiner, Dr. Jones. And he indicated that you were withdrawn and guarded but alert, awake, and oriented. Your mood was mildly irritable and your affect was constricted. His diagnosis was that you showed features but no specific diagnosis of bipolar disorder but could not confirm that there is any mental health -- or could not find any specific mental health issues.

Id. at 18-19.

Moreover, Lomax's counsel emphasized that the court needed to consider the "mental health drugs" and "heavy psychotropic drugs" that had been previously prescribed to Lomax which indicated, "somebody diagnosed it and at one point while he was in custody and in a placement, he did receive some type of treatment[.]" **See id.** at 67-68. Lomax's counsel detailed his concerns for Lomax's mental health and recommended a sentence of 10 to 20 years' incarceration, followed by probation. **See id.** at 70-74. The court acknowledged on the record that counsel's concerns were taken into consideration: "And I understand what your attorney was saying when he said research has showed that the brain is not fully formed until about 25. However, I disagree with your attorney as to what's the necessary period of incarceration." **See id.** at 75-76. Therefore, upon review of the record, Lomax's claim that the court did not consider his mental health when sentencing is without merit.

Additionally, Lomax argues the trial court abused its discretion by enhancing the sentence due to allegations Lomax released his discovery to the public, an issue that was not charged or proven at trial. **See** N.T. 6/16/2022, at 77. At the sentencing hearing, a police officer testified regarding Lomax's suspected social media posts of discovery documents and a rap video posted from inside prison, recorded with a contraband telephone. **See id.** at 44-46. At the hearing, Lomax's counsel objected noting that the account which

posted the information had not been proven to be an account operated by Lomax. *See id.* at 44. Twice, when overruling Lomax's objections, the court recognized counsel's concerns and said he would take the objection into consideration when weighing the evidence: "Again, your objection is overruled. It is a weight issue. I agree with, partially, some of what you're saying. It's going to be part of the record." *Id.* at 41, 44. The record reflects that the court allowed the testimony as additional evidence of Lomax's multiple infractions while in prison. The court took into consideration the officer's inability to prove with certainty that the account was being operated by Lomax. Therefore, we do not find that the trial court committed error in weighing the testimony in sentencing.

Lastly, Lomax claims that the court did not consider the waiver of his right to a jury trial and the expenses it saved the court. However, Lomax's brief fails to elaborate how the trial court's alleged inadequate consideration of his waiver, in context with the numerous other mitigating and aggravating factors presented, was manifestly unreasonable and constitutes an abuse of discretion. Therefore, we find this claim is also without merit.

Upon thorough review of the record, we find Lomax's claims without merit and hereby affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>8/18/2023</u>